No. 20,168.

THOMAS JACKSON *v.* PEOPLE OF THE STATE OF COLORADO.
(376 P. [2d] 991)

Decided December 10, 1962.

Messrs. CRISJOHN and DYER, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for defendant in error.

*En Banc.*

Opinion by MR. JUSTICE HALL.

WE refer to the parties by name.

On August 29, 1961, there was lodged in a justice court in Dolores County, Colorado:

"The Complaint and Information of Patrick G. Waters made before G. P. McAlroy Esq., one of the Justices of the Peace in and for said County, * * * who * * * says that Mr. Thomas L. Jackson on the 28 day of August, A. D. 1961, in said County did attempt to take Game with a spot light with loaded firearm. Contrary to the form of the statute * * * ."

On that same day, at 10:00 a.m., Jackson appeared before McAlroy and entered a plea of not guilty. Hearing was had at that time, and Jackson was found guilty and fined $100.00 and costs of $5.00. Jackson paid the fine and costs.

On September 6, 1961, Jackson filed with McAlroy, in duplicate, his "Notice of Appeal" and on the same day filed with the county court of Dolores County a copy of said notice and paid to the justice of the peace and to the county court all fees required for perfecting an appeal.

On October 16, 1961, the people filed in the county court the following MOTION:

"COME NOW the People of the State of Colorado by Al H. Haas, District Attorney, by his duly qualified deputy, Willard W. Rusk, Jr., and move the Court for the issuance of a Writ of Procedendo and as grounds

therefore state that the notice of appeal heretofore filed by the defendant does not comply with the Statute."

On December 11, 1961, the county court entered its findings and judgment dismissing the appeal. Appearing therein is the following:

"Appeals are creatures of statute, and a party desiring to avail himself of the right to a trial de novo by taking an appeal, must comply with the provisions of the statute on the subject. The mandatory provisions of the statute involved are clear and unambiguous and the Court must enforce statutes as written.

"Wherefore, It Is Ordered and Adjudged that the appeal of the defendant, Thomas Jackson, be dismissed and that a Writ of Procedendo issue to the trial Court."

Jackson is here by writ of error seeking reversal.

The people urged as reason for dismissal of the appeal in the county court only one ground, namely, that the notice of appeal filed by Jackson failed to comply with the statutory requirements governing appeals.

In this court much of the argument of counsel deals with the question of whether one who has been convicted can, after paying his fine, appeal from the judgment. The people contend that the fine having been paid, all questions before the court have become moot.

The notice of appeal which Jackson filed consists of two legal sized sheets setting forth in great detail the facts surrounding his trial, conviction, payment of fine and costs of appeal.

The statute in effect at the time of this appeal is C.R.S. '53, 79-15-11 (Perm. Supp.). It provides as follows:

"(1) * * *.

"(2) Any person convicted of a criminal offense before a justice of the peace may appeal to the appellate court within ten days from the date of such conviction, by filing with the justice of the peace or the clerk of his court a notice of appeal, in duplicate, and shall, at the same time, pay the cost of granting the appeal only.

The notice shall set forth the title of the case, the name and address of the appellant, and the appellant's attorney, if any, and identification of the offense or crime of which the appellant was convicted, a statement of the judgment, including its date, and any fine or sentence imposed, and a statement that the appellant appeals from the judgment.

"* * * *"

■ The objection to the notice is highly technical. Failure to include an "identification of the offense" was in no manner prejudicial to the people. The notice filed contained sufficient information to enable the people to know with certainty what case was being appealed. The notice given motivated the justice of the peace to prepare his "Transcript of Criminal docket" and to forward the same, together with all papers in the case, to the proper county court, and to accept from Jackson the prescribed fee of $1.50 for these services.

Understandably, Jackson, having been arrested at 11:00 p.m. and tried and convicted at 10:00 a.m. the following morning would be at a disadvantage in seeking to inform the people of the "identification" of the offense.

The people suggest that Jackson might have been found guilty in two or more cases by the same justice of the peace, on the same day, with the same punishment imposed, and under such circumstances the district attorney would not know which case was being appealed. We are persuaded that the prospect of such befuddlement and confusion befalling the district attorney of Dolores County is extremely remote.

In 51 C.J.S. 294, Justices of the Peace, §154(b), we find the following language to which we subscribe:

"* * * The notice must be definite and certain, but it should be liberally construed, and mere inaccuracies or clerical mistakes which do not defeat the purpose of the notice will not vitiate it. If the notice conveys to the adverse party sufficient information to enable him to

know what is required of him it need go no further. The notice is sufficient if it informs appellee of enough of the facts concerning the appeal from which any reasonable person would conclude that he had knowledge that the appeal had been taken. * * * .

"The notice of appeal from a justice's judgment, to be effective, must properly designate the judgment appealed from, by a description sufficient to show the applicability of the notice to the judgment, without resort to extrinsic evidence. The object of a notice of appeal is accomplished when the appellate court can ascertain from an inspection of the notice of what particular judgment the appellant complains. * * * ."

█ Giving to the statute in question a liberal construction which most courts sanction, we conclude that the notice of appeal filed was, under the circumstances of this case, sufficient to meet the requirements of the statute and that the appeal was perfected and the county court erred in sustaining the motion to dismiss.

The further contention, that the question of the right to appeal is now moot for the reason that Jackson has paid his fine, is without merit.

Jackson entered a plea of not guilty. The judgment of guilt was expressly made reviewable. The question of guilt is not moot; it is not academic, but very live and real.

Jackson's good name has by the judgment of guilt been impaired. He now is burdened with the stigma of guilt which could be of immeasurably greater importance to him and his future status among his fellow-men than the punishment administered.

On entry of the judgment of guilt, Jackson had the right to appeal and his appeal was perfected on compliance with C.R.S. '53, 79-15-11 (2), (Perm. Supp.), (L. 55, p. 501), supra, and 79-15-11 (5) which provides:

"The defendant shall pay the docket fee of five dollars, required by the appellate court, within twenty days

from the date of the appeal, and upon a failure so to do, the appeal shall be dismissed by the appellate court."

Prior to 1955 one taking an appeal from a judgment of guilt by a justice of the peace was required, as a prerequisite to the right of appeal, to furnish a bond: " * * * in a penalty double the amount of fine and sufficient to cover all costs * * * ."

In 1955 the legislature saw fit to dispense with the requirement of a bond, thus preserving to those unable to furnish bond the right to appeal. In lieu of the requirement for bond, the legislature provided, C.R.S. '53, 79-15-11 (3) (Perm. Supp.):

"When an appellant desires to stay the judgment of the justice of the peace, he shall execute a bond to the people of the state of Colorado, with sufficient security, to be approved by such justice of the peace, in a penalty double the amount of the fine and sufficient to cover all costs, and conditioned for the payment of the amount of the judgment of the appellate court against such defendant, for the defendant's appearance in such appellate court, as and when required, and for compliance with the orders of the appellate court. Thereupon, the justice of the peace shall stay all further proceedings."

It is true that the foregoing language does not specifically provide that one may pay his fine (voluntarily or involuntarily) and still preserve his right to appeal. That conclusion, however, is irresistible. Clearly the statute covers *appellants* who desire to stay the judgment. Just who are the other appellants? One must conclude that they are those who do not desire to stay the judgment, but are ready to pay up with money or go to jail as adjudged, and still proceed with the appeal.

Decisions dealing with the right to appeal after paying a fine or serving a sentence are not uniform. The majority of states hold that under such circumstances the right to appeal has been waived and the judgment having been satisfied nothing remains to be reviewed. Several states hold to the contrary. We feel that the

minority rule is better reasoned, and in harmony with the policy of the legislature in liberalizing the right to appeal, as evidenced by the very clearly implied provisions of 79-15-11 (2) and (5), supra.

In *Commonwealth v. Fleckner,* 167 Mass. 13, 44 N.E. 1053, Justice Holmes, speaking for the court, said:

" * * * We should be slow to suppose that the Legislature meant to take away the right to undo the disgrace and legal discredit of a conviction, (Pub. Sts. c. 169, §19,) merely because a wrongly convicted person has paid his fine or served his term. * * * Of course the payment of the fine in accordance with the sentence was not a consent to the sentence, but a payment under duress."

In *People v. Chamness,* 109 Cal. App. Supp., 778, 288 Pac. 20, it is said:

" * * * Is a good name no longer to be chosen rather than riches? Is a question alive so long as the payment of $100 is involved, but moot when only the matter of a besmirched name remains? We prefer to follow those courts, in the minority though they are, where an appeal is considered useful, though it may serve no purpose but to give a man a chance to clear his name. * * * ."

In *People v. Shambley,* 4 Ill. (2d) 38, 122 N.E. (2d) 172, the Supreme Court of Illinois quoted with approval the following from *Avon v. Popa,* 96 Ohio App. 147, 121 N.E. (2d) 256:

" * * * Certainly an erroneous judgment of conviction of a criminal offense against a man is an injury per se, 'from which the law will intend he is or will be damnified by its continuing against him unreversed.' "

And then went on and stated:

"Based upon these decisions and upon a consideration of the practical aspects of the situation, we think it only just and reasonable that the defendant be given an opportunity to clear his name of the charge he has steadfastly denied and, in view of his timely appeal, will not

construe the payment of the fine as constituting a waiver of his right of review."

Subsequent to submission of this case on briefs, we have, in *City of Pueblo v. Clemmer,* 151 Colo. 546, 375 P. (2d) 99, held that one who has pleaded not guilty, been convicted and paid his fine *involuntarily,* may appeal from the judgment of guilt. We now hold that under 79-15-11 (2) and (5), one complying with the statute may have the judgment of guilt reviewed and that *voluntary* payment of the fine or service of the sentence imposed constitutes no reason for denying the appeal.

We are not unmindful of the following language of this court found in *Scott v. Denver,* 125 Colo. 68, 241 P. (2d) 857:

"That defendant could not appeal from a judgment which he had voluntarily satisfied seems to be well settled. He voluntarily submitted to the conviction and discharged the entire penalty by payment. Nothing remained in which he had a legal interest. The satisfaction of a judgment by the one liable thereunder and a receipt by the opposite party, operates to extinguish it for all purposes. 49 C.J.S., p. 1058, §577."

We no longer subscribe to the foregoing language or language of similar import in other cases, and expressly disavow the same. We find nothing in 49 C.J.S. 1058, cited as authority for the foregoing conclusions, which deals in any manner with the question of appeals.

We do not find the law "well settled" that one who has paid a judgment has lost his right to appeal. On the contrary, we find the "better rule" is stated in 4 C.J.S. 638, Appeal and Error, §214:

"According to other decisions, however, it is held to be the better rule that even a voluntary compliance with the judgment, order, or decree of the court by payment or performance, either before or after taking the appeal, is not necessarily a bar to an appeal or writ of error for its reversal, particularly where repayment or restitution

may be enforced, or the effect of compliance may be otherwise undone, in case of a reversal, and where a statute permits an appeal without obtaining a stay. * * *. It has further been held that it is immaterial whether or not the money paid can be recovered back, since the erroneous judgment is itself an injury from which the law will presume damages."

In *Scott v. Denver*, supra, it would seem that the court may have had the impression that Scott, having "voluntarily submitted to the conviction," lost his right to appeal. Subsequent to *Scott*, supra, the legislature, in 1959, 79-13-2 (Perm. Supp.), expressly provided that:

"Appeals from judgments * * * shall be granted in all cases including those where a plea of guilty has been entered * * *."

The judgment is reversed and the cause remanded with directions to reinstate the case in the county court and proceed with the disposition thereof, as provided by law and in conformity with the views herein expressed.

MR. JUSTICE PRINGLE dissents.

MR. JUSTICE PRINGLE dissenting:

The statute in effect at the time of the appeal involved required, among other things, that the notice of appeal, a requisite to jurisdiction of the appellate court, contain an "identification of the offense or crime of which the appellant was convicted." I have searched the notice of appeal for even one word which by any exercise of semantics describes or identifies the crime or offense of which the plaintiff in error was convicted. None appears there.

It is true that the statute should be liberally construed as the majority opinion points out, 51 C.J.S. *Justices of the Peace* §154b, but liberal construction does not permit the court to neatly excise from the statute the phrase "identification of the offense or crime

of which the appellant was convicted." This the majority opinion does by calling the objection to the notice highly technical. I cannot subscribe to such judicial surgery.

Further, I am persuaded that when a defendant in a criminal action voluntarily fully satisfies a judgment against him by paying the fine assessed, the judgment is extinguished, there is nothing left to review and the entire matter is moot. Such is the holding in the majority of states. 5 *Wharton, Criminal Law and Procedure* §2248.

For the reasons above stated, I respectfully dissent.